**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MARIAN ANTHONY, JASMINE JOHANESEN,

Plaintiffs,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No.: 25-cv-00310-DMS-MMP

**ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS, (2) GRANTING PLAINTIFFS' EX PARTE MOTION FOR LEAVE TO FILE A SURREPLY, AND (3) ORDERING PLAINTIFFS TO SHOW CAUSE**

[ECF Nos. 76, 81.]

Before this Court is Defendant County of San Diego's ("the County") motion to dismiss Plaintiffs' Second Amended Complaint. (Mot., ECF No. 76.) Pro se Plaintiffs Marian Anthony ("Anthony") and Jasmine Johanesen ("Johanesen") filed a response in opposition. (Opp'n, ECF No. 77.) The County filed a reply. (Reply, ECF No. 79.) Plaintiffs then filed an ex parte motion for leave to file a surreply.[1] (Ex Parte Mot., Ex. A, ECF No. 81.) For the following reasons, the County's motion to dismiss is hereby **GRANTED**, Plaintiffs' motion for leave to file a surreply is **GRANTED**, and Plaintiffs are **ORDERED TO SHOW CAUSE** why this case should not be dismissed without prejudice as to the identified defendants not yet served. *See* Fed. R. Civ. P. 4(m). Plaintiffs

[1]The Court has considered Plaintiffs' surreply, which largely restates arguments from their opposition and responds to the County's characterization of the Second Amended Complaint. (*See* Ex Parte Mot., Ex. A) The surreply does not alter any of the Court's conclusions.

shall file a written response on or before October 19, 2026.

## I. BACKGROUND

The Court accepts the following allegations from Plaintiffs' Second Amended Complaint ("SAC") as true for the purpose of resolving the County's motion to dismiss. On August 5, 2022, Plaintiff Anthony's ex-wife contacted the Sheriff's Department to report an alleged domestic violence incident in which Anthony pointed a firearm at her and her boyfriend at Anthony's residence. (SAC 4 ¶ 4, ECF No. 70.) That same day, deputies questioned Anthony's ex-wife and her boyfriend "approximately eight feet apart, within earshot of one another." (*Id.* ¶ 6.) The boyfriend told deputies that Anthony threatened him with a firearm. (*Id.* ¶ 7.) Anthony's ex-wife, however, stated that "she never saw a firearm," and reported no history of domestic violence or child abuse. (*Id.* ¶ 9.)

Later that night, deputies showed up to Johanesen's residence "with a helicopter, police dogs, and multiple squad cars," threatening to force entry and refusing to leave. (*Id.* 5 ¶¶ 14-17.) The deputies told Anthony that they were there "because [he] pointed a gun at [his] ex-wife's boyfriend" before they unsuccessfully attempted to enter the house. (*Id.* 5-6 ¶¶ 17-18.) Anthony told the deputies that "the matter was subject to a property settlement agreement, he had a video security system that would exonerate him, and directed deputies to examine the children's safety through a window." (*Id.* 6 ¶ 22.) Then, "one of the Doe Deputies believed to be Brendan Cook" stated that he didn't see Anthony do anything wrong and that there was no reason for a search warrant. (*Id.*) The matter de-escalated and the deputies departed. (*Id.* 7 ¶ 24.)

At approximately 7:00 PM on the following day, August 6, 2022, several deputies, including "deputies believed to be Michael D. Proffitt and Brendan Cook" arrived at Anthony's residence with his ex-wife. (*Id.*) They aided in removing a camera affixed to his property, saying "cut the wires." (*Id.* 7-8 ¶¶ 27-32.) Later, "body-worn camera footage showed deputies insinuating that they had made an error by wrongly assuming Anthony's residence was community property." (*Id.* 8 ¶ 34.) Two days later, on August 8, deputies

arrested Anthony, during which time they pointed firearms at him, his children, and his mother despite their full compliance. (*Id.* 9 ¶¶ 36-39.) After Anthony's arrest, deputies searched Plaintiff Johanesen's vehicle, which Anthony had been driving. (*Id.* ¶ 43.) Those deputies then transported Anthony to a remote location, where they "dropped him on his face, physically assaulted him," "pulled down his pants, repeatedly hit and kicked him, and rendered him unconscious" despite his being handcuffed and "defenseless." (*Id.* ¶¶ 47-48.) Anthony was hospitalized as a result. (*Id.* 10 ¶ 49.)

On August 9, 2022, a deputy "believed to be Deputy Revalo, prepared and obtained a search warrant for Plaintiff Johanesen's residence." (*Id.* 11 ¶ 54.) The warrant "sought firearms, prescriptions, photographs, and documents" and was executed when Johanesen was not home. (*Id.* ¶¶ 56, 58.) The deputies searched the premises and seized items not listed on the warrant without accounting for them. (*Id.* ¶¶ 66-67.) That same day, "Anthony was charged with four felonies—aggravated assault, child endangerment, spousal abuse, and gross bodily harm—despite witness statements that contradicted those charges." (*Id.* ¶ 68.) A deputy "believed to be Deputy Angel or Deputy Long," searched Anthony's wallet and took out $600 in cash without returning it. (*Id.* ¶¶ 73-77.)

Additionally, deputies repeatedly attempted to gain access to Anthony's iPhone using his Face ID and passwords despite Anthony's repeated refusal to grant them access. (*Id.* ¶¶ 78-81.) Deputies maintained possession of his iPhone after he was released, with location data showing the phone was at the Vista Detention Center and "metadata" reflecting use by deputies while it was still in police custody, including attempted log-ins. (*Id.* 13-14 ¶¶ 81-88.) Anthony was released on August 9 and received his iPhone on September 12, 2022. (*Id.* 14 ¶ 82; 15 ¶ 99.) Despite attempts by Plaintiffs Anthony and Johanesen to file complaints with the Sheriff's Department regarding these incidents, the Internal Affairs department refused to initiate any administrative investigations into the deputies' conduct. (*Id.* 15-16 ¶¶ 95-105.) On August 19, 2024, after Plaintiffs say they filed their original complaint, deputies came to Anthony's residence and "waited outside

the gate," (*id.* 16 ¶ 108), and on February 3, 2025, they refused Anthony access to the courthouse to file a motion. (*Id.* 17 ¶ 112.)

Anthony and Johanesen then filed a complaint alleging various state and federal law claims against the County of San Diego, the San Diego County Sheriff's Department, and several of its deputies. (Compl., ECF No. 1-2.) In response, the County filed a motion to dismiss for failure to state a claim. (Mot., ECF No. 10.) We granted that motion, in relevant part, with leave to amend Plaintiffs' §1983 and tort claims to cure deficiencies concerning: (1) the statute of limitations, which we held bars Plaintiffs' claims absent an exception such as equitable tolling, waiver or estoppel; (2) the specificity of factual allegations throughout the complaint; and (3) clarification of which causes of action are brought on behalf of which Plaintiff. (Order Granting Mot. to Dismiss 6-14, ECF No. 34.)

Now before the Court is Plaintiffs' Second Amended Complaint, which "withdraw[s] any previously asserted state-law tort cause of action" and "proceeds solely on Plaintiffs' federal claims under 42 U.S.C. §1983." (SAC 2 ¶ 1.) In it, Plaintiffs allege nineteen causes of action, the first fourteen of which are §1983 claims against several unserved individual deputies and the last five of which include *Monell* claims against the County and the Sheriff's Department. (*Id.* 17-57.)[2] The County filed a motion to dismiss, arguing that Plaintiffs' amended complaint fails to cure the deficiencies that led to their prior complaint's dismissal. (Mot., ECF No. 76.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."

[2]The original complaint named the County "by and through" the Department. (Compl. 1.) The Second Amended Complaint now names the Department separately from the County. (SAC 1, 43-51.) As a separately suable entity, the Department needs its own service. *See Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 556 (9th Cir. 2001) (concluding that the Los Angeles Sheriff's Department is a "public entity" that is "separately suable in federal court" apart from the County) (citation omitted). Accordingly, the Court addresses Counts 15-19 only as to the County.

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Pro se pleadings and complaints are to be liberally construed, and, no matter how "'inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted); *see also Watanabe v. Derr*, 115 F.4th 1034, 1043 (9th Cir. 2024) ("courts must frequently look to the contents of a pro se filing rather than its form." (citation omitted)), *cert. granted sub nom. Nielsen v. Watanabe*, 146 S. Ct. 2753 (2026).

## III. ANALYSIS

### A. Unserved Defendants

The County has nowhere indicated that it represents the Sheriff's Department or any of the deputy defendants, named or Doe. (*See, e.g.,* Notices of Appearance, ECF Nos. 2, 3.) Moreover, none of those defendants have been served by Plaintiffs. (*See* Proofs of Service, ECF Nos. 6, 47, 59, 61.) Because federal courts have no jurisdiction over defendants who have yet to be served and the County does not have standing to assert claims on behalf of other defendants, the Court does not address claims against the unserved deputies or any defenses raised on their behalf. *See Direct Mail Specialists, Inc.*

*v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4."); *Mantin v. Broad. Music, Inc.*, 248 F.2d 530, 531 (9th Cir. 1957) ("the moving defendants, obviously, had no standing to seek dismissal of the action as to the nonmoving defendants."). As to the unserved defendants, Plaintiffs are **ORDERED TO SHOW CAUSE** why the claims against the Sheriff's Department and defendants Martinez, Proffitt, Cook, Chu, Angel, Long, Arevalo, Steinmyer, Estes, Ryan, Smith, Saleto, and Ehlers, (SAC 1), should not be dismissed for failure to effect timely service.[3] Failure to comply will result in dismissal of these defendants without prejudice. *See* Fed. R. Civ. P. 4(m).

### B. Claims Against the County: *Monell* Liability

A local government can be sued under §1983 only when an employee or agent inflicts injury while executing that government's official policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a claim under *Monell*, a plaintiff must show that (1) the plaintiff was deprived of a constitutional right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to that right, and (4) the policy was the moving force behind the violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted). "The first inquiry in any case alleging municipal liability under §1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). That policy or custom, moreover, must be the result of a deliberate choice made by "officials responsible for establishing final

[3] The Doe defendants are not listed here, as they cannot be served until identified, and Plaintiffs should get the chance to identify them through discovery. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("the plaintiff should be given an opportunity through discovery to identify the unknown defendants"); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) ("the district court erred in dismissing Wakefield's complaint against Doe simply because Wakefield was not aware of Doe's identity at the time he filed his complaint.").

policy with respect to the subject matter in question." *Id*. (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

A municipal policy can take three forms: (1) an "expressly adopted official policy," (2) a longstanding custom, including failure to adequately train employees, or (3) ratification of a subordinate's unconstitutional decision by an official with final policy-making authority. *See Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 883-84 (9th Cir. 2022), *overruled on other grounds by Arizona All. for Retired Ams. v. Mayes*, 186 F.4th 622 (9th Cir. 2026) (en banc). Here, Plaintiffs allege several *Monell* claims against the County, including failure to train (Counts 15, 17, 19), longstanding custom (Count 16), and express policy (Count 18). (SAC 43-57.)[4] For each of the following claims, it is assumed, without deciding, that Plaintiffs can show that they were deprived of a constitutional right.

a. *Failure to Train*

"To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021). Mere negligence in training or supervision is insufficient. *Dougherty*, 654 F.3d at 900. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted). However, proving a pattern may be unnecessary where "the unconstitutional consequences of failing to train could be so patently obvious." *Id*. at 64.

---

[4]Some courts treat these as different arguments in support of a single *Monell* claim. *See Quinto-Collins v. City of Antioch*, No. 21-CV-06094-VC, 2022 WL 18574, at *2 (N.D. Cal. Jan. 3, 2022) ("the different theories of liability (e.g., ratification, failure to train) are best understood . . . as different arguments in support of a single claim.").

In Count 15, Anthony alleges that because the County insufficiently enforced body camera usage "during critical custodial events," failed to meaningfully review "recording gaps or camera avoidance behavior," and failed to require adequate corrective review, "Defendants created a custodial environment in which force used against restrained persons was less likely to be fully documented, promptly detected, or meaningfully reviewed." (SAC 45 ¶ 5.) Count 17 similarly provides that the County "created an investigative environment in which deputies could continue to escalate a domestic-violence allegation" even after they were aware of facts that "undermined a straightforward criminal narrative" "[b]y failing to ensure adequate training and supervision on witness separation, basis-of-knowledge assessment, dominant-aggressor analysis . . . escalation limits, and report integrity." (*Id.* 50 ¶ 5.) Finally, Johanesen alleges in Count 19 that "Defendant County of San Diego failed to adequately train and supervise deputies performing recurring residential search-warrant functions," (*id.* 55 ¶ 3), "creating an environment in which deputies could procure and execute a residential search warrant without fairly presenting exculpatory facts, without adequately confining the warrant to constitutionally limited objectives, and without meaningful limits on the scope of the resulting search and seizure." (*Id.* 56 ¶ 5.)

None of these claims allege facts that demonstrate a pattern of constitutional violations by untrained employees or an incident so patently unconstitutional as to obviate the need to demonstrate such a pattern. *See Connick*, 563 U.S. at 63-64 (describing that a pattern of similar violations may not be necessary only "in a narrow range of circumstances" such as "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force.") (citations omitted); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012) (explaining that policies of omission can only create municipal liability if the omission "'reflects a *deliberate or conscious choice*'

to countenance the possibility of a constitutional violation.") (citation omitted) (emphasis added). As such, Counts 15, 17, and 19 are **DISMISSED** with leave to amend.[5]

b. *Longstanding Custom*

To establish *Monell* liability based on a municipal custom, that custom "must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). The alleged practices cannot be "isolated or sporadic incidents" but instead must be "of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (citation omitted). Essentially, the custom must be "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Anthony alleges in Count 16 that "Defendants maintained a longstanding custom and practice of tolerating force against persons who had already been handcuffed, restrained, subdued," and of "handling serious force incidents and complaints through . . . non-corrective review practices that failed to deter, discipline, or correct misconduct." (SAC 46-47 ¶ 3.) He argues that through this custom, the County "communicated to deputies that force used after control had already been achieved would not likely result in meaningful scrutiny, discipline, or deterrence" and "normaliz[ed] the use of additional force after a suspect had already been . . . brought fully under deputy control." (*Id.* 47-48 ¶ 5.) As evidence of this custom, Anthony names, without supporting explanation, factual details or citations, "the Myles and Birtcher matters," "the Sheriff's 2020-2021 Internal Affairs report," and the conclusion of a California State Auditor that "the Sheriff's review systems were insufficient and had not consistently led to significant corrective action." (*Id.* 47 ¶ 4.)

[5] "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015).

These allegations, even when construed liberally, fail to demonstrate that the County has a widespread custom of encouraging excessive force. *See Brown*, 520 U.S. at 405 ("Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."). Accordingly, Count 16 is **DISMISSED** with leave to amend.

c. *Express Policy*

A "plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. . . even heightened negligence will not suffice." *Brown*, 520 U.S. at 407 (citation omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 410. Here, Anthony alleges that the Sheriff's policy manual's "pro-arrest response and investigation of domestic violence related incidents . . . as implemented, encouraged deputies to resolve ambiguity in favor of arrest." (SAC 52-54 ¶¶ 4, 5.) A policy that encourages arrest in domestic violence situations is not unlawful or unconstitutional on its face, particularly because the SAC does not allege any provisions that direct deputies to act without probable cause. *See Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 138 (E.D.N.Y. 1998) (rejecting the plaintiff's argument that a facially pro arrest policy for domestic disputes is unconstitutional as executed, as failures to perfectly execute a legal policy do not render it illegal.). As such, to create *Monell* liability for the County, the policy must have been enacted with deliberate indifference, but Anthony fails to allege any facts that show that this policy was passed with disregard for a known or obvious risk to the constitutional rights of arrestees. *See Castro*, 833 F.3d at 1076 (noting that deliberate indifference is established "when facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the

violation of the constitutional rights of their citizens.") (emphasis omitted) (quoting *City of Canton*, 489 U.S. at 390). Thus, Count 18 is **DISMISSED** with leave to amend.

### C. Equitable Tolling

Because Plaintiffs are granted leave to amend, the Court addresses the County's argument that the claims against it are time barred. Most of Plaintiffs' claims arise from events between August 6 and 9, 2022. (*See* SAC.) The Court previously took judicial notice that this action was filed on August 21, 2024, (Order Granting Mot. to Dismiss 11-12), 12 to 15 days after the limitations period ran on those claims. The Court dismissed those claims as time barred but gave Plaintiffs leave to allege equitable tolling, waiver or estoppel. (*Id.* 12.) At this phase in the proceedings and with the facts now before the Court, we cannot conclude that Plaintiffs have failed to plausibly allege facts supporting tolling. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1275-76 (9th Cir. 1993) (explaining that the "sole issue is whether the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the *potential* applicability of the equitable tolling doctrine" and that the "fact intensive test for equitable tolling is more appropriately applied at the summary judgment or trial stage"). Dismissal at this phase is only appropriate in "unusual cases" where "some fact, evident from the face of the complaint, support[s] the conclusion that the plaintiff could not prevail, as a matter of law, on the equitable tolling issue." *Id.* at 1276. As such, the County's motion to dismiss on this ground is **DENIED without prejudice**.

## IV. CONCLUSION

For the reasons stated above, the County's motion to dismiss is **GRANTED**, Plaintiffs' motion for leave to file a surreply is **GRANTED**, and Plaintiffs are **ORDERED TO SHOW CAUSE** why this case should not be dismissed without prejudice as to the unserved defendants identified above. *See* Fed. R. Civ. P. 4(m). Plaintiffs shall file a written response on or before October 19, 2026. If Plaintiffs wish to file a Third Amended Complaint to address the pleading deficiencies identified above, they shall do on or by November 2, 2026, and in accordance with the Federal Rules of Civil Procedure 15 and

Civil Local Rule 15.1. Plaintiffs may not add any new claims. Plaintiffs are cautioned that if they fail to cure the pleading deficiencies set out above, their claims will be dismissed with prejudice and without further leave to amend.

**IT IS SO ORDERED.**

Dated: October 5, 2026

Hon. Dana M. Sabraw
United States District Judge